Herbert S. Olson, pro se
P.O. Box 815
Fallon, NV. 89406
775-750-8704
olsonherb52@gmail.com

402⁶⁰   Date 10/23/2023
3-0352   Initials GA

UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA

HERBERT S. OLSON

    Plaintiff,

v.

NEVADA, STATE CAPITOL,
And Does 1-10

    Defendant's

Case No. 3:23-cv-00513-ART-CLB

COMPLAINT:

TITLE II of THE AMERICANS WITH DISABILITY ACT of 1990, SECTION 504, REHABILITATION ACT of 1973 AND NRS: 484B.467

JURY TRIAL DEMANDED

Plaintiff, HERBERT S. OLSON, pro se, complains against the Defendant's, STATE OF NEVADA, STATE CAPITOL, and Does 1-10, inclusive, alleges and states as follows.

I. JURISDICTION AND VENUE

1. This Court has jurisdiction of the action under Title II of the Americans with Disabilities Act of 1990, ("ADA"), 42 U.S.C Section 12131-12132, Section 504 of the Rehabilitation Act of 1973,

1.

("RA"), 29 U.S.C. Section 794(a) and U.S.C. Section 1331 and 1345, and Nevada Revised Statute NRS: 484B.467.

2. Venue is proper in the United States District Court of Nevada, under 28 U.S.C. Section 1391.

## II PARTIES

3. Plaintiff, HERBERT S. OLSON, pro se

4. Defendant's, STATE of NEVADA, STATE CAPITOL and Does 1-10. State of Nevada is a "public entity", within the meaning of the ADA, 42 U.S.C. Section 12131(1), 28 C.F.R. Section 35.104 and is therefore subject to Title II of the ADA, 42 U.S.C. Section 12131. et seq.

5. At all times relevent to this act the State of Nevada, State Capitol is a "Recipient of federal finanical assistance, including medical funds, and therefore subject to Section 504 of the RA, 29 U.S.C. Section 794(a).

## III BACKGROUND

A. The Americans with Disabilities Act of 1990, Title II, Section 504 of the Rehabilation Act of 1973, and NRS 484B.467.

6. Congress enacted the ADA on July 26, 1990, to provide a clear and comprehensive view to national mandate to eliminate for discimination against individuals with disabilities is discrimination, 42. U.S.C. Section 12101(b)(1). to isolate and segreagate individuals with disabilities is discrimination, 42 U.S.C Section 12101(a)(2).

7. "[NO]" qualified individual with a disability shall reason of such

disability be excluded from participation in or be denied the benefits of the services, programs or activities of a "public entity" or subject to discrimination by any such entity. 42 U.S.C. Section 12132, 12134. (See) also 28 C.F.R. Section 35.130(a); 35.152(b)(i).

8. Congress directed the Attorney General to, issue Regulations implementing Title II of the ADA. 42 U.S.C. Section 12134.

9. Title II regulations required public entities to administer services, programs and activities in the most intergraded setting appropriate to meet the needs of "qualified individual with a disability". 28 C.F.R. Section 35.130(d).

10. Discrimination on the basis of disability is also prohibited by Section 504 of the RA. 29 U.S.C. Section 794(a).

11. The Rehabilitation Act, implementing regulations provide that recipients of "federal financial assistance" shall administer programs and activities in the most intergraded setting appropriate to the needs of qualified individuals with disabilities. 28 C.F.R. Section 41.5(d), 45 C.F.R. Section 84.4.

## IV  INTRODUCTION

12. Plaintiff, Herbert S. Olson first went to the State Capitol in September, 2022. Olson did not have access at that time because of construction. Olson had to wait until 2023 to have access to the State Capitol.

13. Olson was denied equal access to the State Capitol because of construction and a long winter. Still Olson is being denied equal access to the State Capitol, at 101 North Carson Street, Carson City, Nevada.

14. Olson thought the State would bring up the outside of the facility when doing work on the State Capitol. But nothing was done to bring the facility into compliance with Title II of the ADA.

3.

## V FACTUAL EVIDENCE

15. Plaintiff, Herbert S. Olson was born April 2, 1952, Elko General Hospital, Elko, Nevada is a natural citizen of the United States of America Resides living in his car in Carson City area in this jurisdiction. Olson is also a "qualified individual with a disability", as the term in 42 U.S.C. Section 12131(2).

The disability that Olson has is called the Brown Sequad Syndrom (BSS) is a rare neurological condition characterized by a lesion in the spinal cord which results in weakness or paralysis (hemiparaplegia) on one side of the body and loss of sensation (hemianesthesia) on the opposite side BSS may be caused by a spinal cord tumor, trauma (such as a puncture wound to the neck or back, ischemia (obstruction of blood vessel), or infectious or inflammatory diseases such as tuberculosis or multipale sclerosis.

16. The Americans with Disabilities Act applies to the State of Nevada because it is a "public entity" as defined by Title II of the ADA. 42 U.S.C. Section 12131(1). Title II prohibits discrimination against qualified individuals with a disability on the basis of disability in the services, programs or activities of a public entity. 42 U.S.C Section 12132.

17 "[NO]" qualified individual with a disability shall reason of such disability be excluded from participation in or be denied the benefits of the services, programs or activities of a public entity, or be subject to discrimination by any such entity. 42 U.S.C. Section 12132.

4.

18. Qualified individual with a disability means an individual with a disability who with or without reasonable modifications to polices, practices or procedures to removal of architectual, communications, or transportation barrier, or the provision of auxilary aids, and services meets the essential eligibility requirements for the recipt of services, or participation in programs or activities provided by the public entity. 42 U.S.C. Section 12131(2), see also, 28 C.F.R. Section 35.108.

19. The Department of Justice's revised regulations for Title II of the ADA, were published in the Federal Registry of September 15, 2010. Those regulations adopted revised enforceable accessibility standards called the "2010 Standards for Accesible Design," 2010 STANDARDS. On March 15, 2012, Compliance with the 2010 standards was required for new construction and alteration under Title II of the ADA, March 15, 2012, is also the compliance date for using the 2010 Standards for accessibilty and barrier Removal.

## VI NEVADA STATE CAPITOL

A. Plaintiff, HERBERT S. OLSON submits a list of Title II of the ADA violations and violating NRS: 484B.467, at the Nevada State Capitol, 101 North Carson Street, Carson City, Nevada.

1. Title II of the ADA prohibits discrimination by public entities against qualified individuals with a disability.

2. In order to state an ADA claim under Title II of the ADA and Section 504 of the RA a plaintiff has to show: (1) he or she is a qualified individual with a disability; (2) he or she was excluded from participation in or denied the benefits of the public entity, services, programs, activities, or otherwise discrimination against by the public entity, and (3)

5.

the exclusion, denial of benefits, or discrimination was by reason of plaintiff's disability.

3. A public entity must operate each service, program or activity, so that the service, program or activity, when viewed in its entirely, is readily accessible and usable by individuals with disabilities.

4. Since the function of Title II of the ADA is to ensure the accessibility of public services for people with disabilities, it naturally follow that a person does not suffer an injury (and therefore does not have standing to sue), in a Title II access case unless they were unable to access a public service because of his or her disability.

5. The "injury" is the Plaintiff's inability to readily access the facility and resulting denial of the benefits of the public services.

6. Notwithstanding, "A plaintiff bringing claim under Title II of the ADA must have actual knowledge of an access barrier or ADA violation. But the plaintiff need not encounter the barrier or physically visit the place of public entity (public accommodation), therefore, Olson still would have standing to sue for all barriers, as long as those barriers relate to the plaintiff's specific disability. (see) Langer v Kiser (9th Cir. 2023)

7. If the facility is altered, all those alterations in the "Path of Travel" to those alterations must be done in accordance with the application of the Americans with Disabilities Act Accessible Guidelines (ADAAG). (2010 Standards of Accessability.

8. Title II of the Americans with Disabilities Act focuses on programs accessibility. However Section 504 of the Rehabilitation Act goes much further than the ADA by requiring all operations of many kinds of vanity be meaningfully accessible to persons with disabilities See; 29 U.S.C. Section 794(b).

## VII. VIOLATIONS: TITLE II, NRS: 484B.467

1. Section 36.403, ALTERATIONS; PATH OF TRAVEL

    (a.) A "Path of Travel" includes a continuous unobstructed way of pedestrian passage by means of which the altered area, may be approached, entered and exited, and which connects the altered area with an exterior approach (including sidewalks, streets and parking areas) an entrance to the facility and other parts of the facility.

    (b.) An accessible "path of travel" may consist of walks, sidewalks, curb ramps and other interior and exterior rooms and other improved areas, parking access aisle, elevators and lifts, or a combination of the elements.

    (c.) For the purpose of this part the term "path of travel" also includes the restrooms, telephones, and drinking fountains servicing the altered area.

2. Section 502, Handicap Parking, 2010 Standards, ADA compliant

    (a.) Section 502.2, Vehicle Spaces. Car parking spaces shall be 96 inches (2440 mm) wide minimum and van parking shall be 132 inches (3350 mm) wide minimum shall be marked to define the width and shall have an adjacent access aisle complying with Section 502.3, Access Aisle (1) 60 inches minimum, (2) van accessible 96 inches minimum. Figure 502.2, Parking Spaces

    EXCEPTION: Van parking shall be permitted to be 96 inches wide minimum where the access aisle is 96 inches wide minimum.

    (b) Section 502.4; Floor or ground surfaces. Parking spaces and access aisles serving them shall comply with Section 302. Access aisle should be at the same level as the parking spaces they serve. (1:48 slope in all directions) Changes in level "NOT" permitted (Figure 9, Dimensions of parking spaces), comply with 4.12(5)(b).

7.

(C) Section 502.6; Parking Spaces identification sign shall include the International Symbol of Accessibility complying with Section 703.7.2. Signs identifing "van accessible" parking spaces shall contain the designation "van accessible". Sign shall be 60 inches minimum above the finished ground surface measure to the bottom edge of the sign. (SH 4.6.4)

(D) Section 502.3.3 of the 2010 Standards require that the access aisle be so as discourage parking in them.

(E) Section 208.2.4; 2010 Standards, van accessible parking spaces, for every six(6) or fraction of six parking spaces required by Section 208.2 to comply with Section 502, at least one will be van accessible parking space complying with Section 502

(F) Van accessible parking spaces, the 1991 Standards at Section 4.1.2(5)(b), 4.6.3, 4.6.4 and 4.6.5 are still the same in the 2010 Standards Section 4.6.3; Parking Spaces, 4.6.4 Signage.

3. State of Nevada, Nev. Rev. Stat. Section 484.408 (2a3) Replaced in Revision by NRS: 484B.467

(a) NRS: 484B.467, Parking spaces designed for persons with a disability. At all van accessible access aisles must be indicated by a sign(a)(b).

(b) The bottom of which must not be less than 48 inches above ground. See, Section 502.6, 60 inches above ground is required.

4 Section 642, Sidewalk Design Criteria

(a) Sidewalks or pedestrian paths will be accessible to the maximum extent feasable to all people according to the Americans with Disabilities Act of 1990.

5. Section 642.8.1. Sidewalk location and width sidewalks are to be at least 60 inches wide. Howere if necessary due to geometric

8.

constraints, the width of the sidewalk may be reduced to 48 inches minimum width, as required in PROWAG by completing the Design Exception Process. However, the ADA requires a minimum width of 48 inches in all cases. (PROWAG R301.3.)

6. Section 642.8.6, Landings

(a) Landing are level areas built to provide pedestrians with a place to rest or make turning maneuvers, or where it is necessary to have a level, stable area to allow access to another feature such as pedestrian push button. The slope of the landing should allow for drainage and be designed and built with a minimum 1% slope and may not exceed a slope of 2% in any direction. The landing must extend 5 feet minimum from the door. Landing should be the minimum of 60 inches x 60 inches.

7. Section 406.4, Landings, Curb Ramps

(a) Landing shall be provided at the top of curb ramps. The landing clear length shall be 36 inches minimum. The landing clear width shall be at least as wide as the curb ramp, excluding flaired sides, leading to the landing.

8. Section 705; Detectable Warnings,

(a) Detectable warnings shall consist of a surface of truncated domes and shall comply with Section 705.

9. Section 216, Signs

(a) Section 216.2, Designation Interior and exterior signs identify permanent room and spaces shall comply with 703.1, 703.2 and 703.5

(b) Section 216.3, Directional and International signs, that provide direction to or information about interior spaces and facilities of the site shall comply with Section 703.1 and 703.2.

(c) Section 264; Means of Egress, Sign for means of egress shall comply with 2164 and 2164.1. Exit doors of exit passageways, exit discharge, and exit stairway shall be identified tacticle signs complying

with 703.1, 703.2 and 216.5. Parking spaces shall comply with Section 502, shall be identified by signs complying with Section 502.6.

10. NRS: 484B.467; Handicap parking space designed for persons who are handicapped: Signs, required plates or placard for parking.

11. Americans with Disabilities Act, (ADA) Accessibility Guidelines for Transportation Vehicles; e. C.F.R.: 36 C.F.R. Part 1192

(a) PART 37- Transportation Services for Individuals with Disabilities (ADA); 42 U.S.C. Section 12101-12213; 49 U.S.C. 322.

(b) PART 38- Americans with Disabilities Act, Accessibility Specifications for Transportation Vehicles, 42 U.S.C. Section 12101-12213, 49 U.S.C. 322.

(c) Section 38.23(d) of the Department of Transportation (DOT) ADA Regulations requires all ADA compliant buses and vans to have a two-part securement system, one to secure the wheelchair, and a seat belt and shoulder harness for the wheelchair user.

12. Title II of the Americans with Disabilities Act, (ADA), mandates that "[NO]" qualified individual with a disability shall, be reason of such disability, be excluded from participation in or be subject to discrimination by any such entity. 42 U.S.C. Section 12132. Similarly, Section 504 of the Rehabilitation Act, (RA), mandates in part "[NO]" otherwise qualified individual with a disability in the United States... shall be reason of her or his disability be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program, service or activity receiving federal financial assistance. 29 U.S.C. Section 794(a).

13. Olson's ADA injury is the State's denial of the benefits of the public services, programs and activities has caused Olson, emotional stress, anxiety, disappointment, intimidation, humiliation, nervousness, degraded reputation and made to feel like an outcast living in his car.

10.

# I. COUNT ONE
## AMERICANS WITH DISABILITIES ACT

1. Title II of the Americans with Disabilities Act of 1990 requires that "[No]" qualified individual with a disability, such by reason of such disability be excluded from participation in, or be denied the benefits of the services, programs or activites of a "public enity" or be subjected to discrimination by any such enity. 42 U.S.C. Section 12132, 28 C.F.R. Section 35.130(a).

2. Title II of the ADA requires a public entity to make the reasonable modifications in polices, practices and procedures when the modifications are necessary to avoid discrimination on the basis of the disability, unless the public entity demonstrates that accomplishing the modifications would fundamentally alter the nature of the services, programs or activities. 28 C.F.R. Section 35.130(b)(7)(i).

3. Additionally under Title II of the ADA, a public entity may not directly or through constructual or other arrangements utilize criteria or methods of administration that have the effect of subjecting qualified individuals with a disability to discrimination on basis of disability. 28 C.F.R. Section 35.130(b)(3)(i).

4. The State of Nevada, State Capitol is within the meaning of the Americans with Disabilities Act of 1990. 42 U.S.C. Section 12131(1) and 28 C.F.R. Section 35.104 and therefore, subject to Title II of the ADA and its implementing requirements.

5. On July 26, 1990, President George Herbert Walker Bush signed into law the Americans with Disabilities Act of 1990 (ADA), 42 U.S.C. Section 12101 et seq. establishing the most important civil rights law for people with disabilities in our country's history. Congress explicitly stated that among the purpose of the ADA are:

A.) "To provide a clear and comprehensive national mandate

11.

for the elimination of discrimination against individuals with disabilities"

(b) "To provide clear, strong, consistent, enforceable standards addressing discrimination against individuals with disabilities."

(c) "To invoke the sweep of Congressional authority, including to power to enforce the 14th Amendment and to regulate commerce, in order to address the major areas of discrimination faced day-to-day by people with disabilities. 42 U.S.C. Section 12101(b).

6. In passing the ADA, Congress identified some 43,000,000 Americans as having one or more disabilities and found that discrimination against individuals with disabilities continues to be serious and pervasive social problem. 42 U.S.C. Section 12101(a)(1). There were over 43 million Americans with a disability in 2015, representing 12.6% of the civilian noninstitutionalize population.

7. Congress found that, historically, society tended to isolate and segregate individuals with disabilities, and despite some improvements, such forms of discrimination against individuals with disabilities continue to be serious and pervasive social problem. 42 U.S.C. Section 12101(a)(2).

8. Congress also found that discrimination against individuals with disabilities persist in such critical areas as housing, institutionalization and access to public services. 42 U.S.C Section 12101(a)(3).

9. The ADA has a clear and comprehensive national mandate to eliminate discrimination against individuals with disabilities and to establish clear, strong, consistent, enforceable standards addressed discrimination against individuals with disabilities. 42 U.S.C. Section 12101(b)(1)-(2).

10. To future ensure a comprehensive and uniform federal law, the ADA preempt's state and local law unless those laws provide protection for the rights of individuals with disabilities which is greater than, or equal to protection enforced by the ADA. 42 U.S.C. Section 12131-12134, 28 C.F.R. Part 35

Section 35.101 et. seq.

11. Under Title II of the ADA, the programs, services and activities of public entities must be accessible to people with disabilities unless that would cause a "fundamental alteration" to the program or activity or constitute an "undue financial and administrative burden" to the entity. 28 C.F.R. Section 35.149-50.

12. Pursuant to the mandates of 42 U.S.C. Section 12134(a), on July 26, 1991, the Department of Justice, Office of the Attorney General promulgated federal regulations to implement the requirements of the ADA. These Regulations are codified at 28 C.F.R. Part 36, the ADA Accessible Guidelines, ("ADAAG").

13. Defendant has discriminated, and continues to discriminate against the Plaintiff by denying Olson access to, and full and equal enjoyment of one or more of the goods, services, programs, facilities, privileges, advantages, and/or accommodations by failing to remove substantially all architectural barriers as required by Title II of the ADA, and 28 C.F.R. 36.302 et seq., as a result of, all the violations, as expressed above, as well as those similar to, and including generally the following:

A. Lack of wheelchair ramps, sidewalks, curb ramps, detectable warnings, handicap parking, signage at the State Capitol, 101 North Carson Street, Carson City, Nevada.

B. Insufficient and inadequate public and employee handicapped parking, van accessible parking at the State Capitol

14. Pursuant to the ADA, a public entity illegally discriminates against persons with disabilities by excluding them from the benefits of services of the public entity. 42 U.S.C. 12132.

15. Olson is entitled to recover expert fees, cost and expenses, occurred in the case from the Defendant's pursuant to, 42 U.S.C. Section 12205.

16. This Court is vested with the authority to grant Olson's injunctive relief including an Order to alter the services, programs and activities of the Defendant's to make the Nevada State Capitol readily accessible to, and usable by individuals with disabilities to the extent required by the ADA.

(a) Accepting jurisdiction in this case and declare that polices, procedures and services of the Defendant's are discriminatory and not in compliance with Title II of the ADA.

(b) Requiring the Defendant's to alter ramps, sidewalks and parking to allow access to services, programs and activities to comply with federal law and regulations.

(c) Requiring the Defendant's to install curb ramps with detectable warnings at any intersection that was constructed, resurfaced, restored, and/or rehabilitated within the State Capitol facilities at 101 North Carson Street

(d) Requiring the Defendant's being up to code all the handicap parking and van access aisle at the State Capitol.

(e) Mandating that Defendant's undertake an ADA self-evaluation and that such evaluation contain a discription of all of Defendant's streets, sidewalks ramps, curb ramps, handicap parking, signage, services, programs and activities within the State Capitol facilities, review of all polices and practices that govern the administration of such streets, sidewalks, curb ramps, handicap parking, signage, ramps, programs and services, and an analysis of whether the polices and practices regarding such administration adversly affect the full participation of and use by individuals with disabilities.

(f) Mandate Defendant's to expeditiously, make all reasonable and appropriate modifications to there polices, practices and procedures, provide effective signage, remove all architectural barriers that are readily achievable, provide alternative means when necessary and otherwise, take all

14.

such steps as are reasonable and necessary to ensure that persons with disabilities are no longer excluded, denied services, segregated or otherwise treated differently and discriminated against by the State Capitol.

(g) Awarding reasonable expert fees, cost, and expenses to the Plaintiff.

(h) Awarding such other and further relief as the Court deems necessary, just and proper; and

(i) Retaining jurisdiction of the case until Defendant's has fully complied with the order of the Court.

## II COUNT TWO
## VIOLATION OF THE REHABILATION ACT

17. Section 504 of the Rehaboibltion Act, Pub. L No. 93.112, 87 Stat 394, codified at 29 U.S.C. Section 701 et seq., is American Legislation that guaranties certain rights to people with disabilities. It was one of the first U.S. Federal Civil Rights laws offering protection for people with disabilities

18 Section 504 state that "[No]" qualified individual with a disability in the United States shall be excluded from denial of benefits, of or be subjected to discrimination under any services, programs and activities that others receive federal finanical assistance.

19. Section 504 laid the groundwork for the development of Title II of the ADA, as Congress stated that the purpose of Title II was to make applicable the prohibition against discrimination on the basis of disability currently set out in regulations implementing Section 504 of the RA, to all services, programs and activities provided or made available by state and local governments, or institutions mentalities or agencies

15.

thereto, regaurdless or not such entities receive federal financial assistance.

20. By this Reference, Olson incorporates the above factual statements as if fully stated herein.

21. The Rehabilation Act provides that no entity receiving federal funds shall discriminate against individuals based on that individuals disability.

22. Defendants are enities that receives federal financial assistance in numerous areas.

23. "Discrimination" in this context includes providing a public service that is not reasonably accessible to a person with a disability.

24. "Discrimination" in this context includes the provision of public rights of way for predestrians as a whole, yet not making reasonable modifications to these areas to people who reley on wheelchairs or other similar mobility device.

25. As described herein, Defendants maintains public right of way that are not accessible to all the people who rely on mobility devices, including wheelchairs.

26. Olson is entitled to relief under the Rehabilation Act, Section 794(b), including an order that the Defendant's make reasonable modifications to the public rights of way.

27. Plaintiff, Herbert S. Olson, pro se, is entitled to recovery compensatory damages for the harm he has experienced, including fear, humliation, anger and other forms of emotional stress, anxiety, disappointment, and made an out cast by being forced to live in his car now since June 6, 2018, as a result of the violations of the Rehabilation Act of 1973, described herein, due to the Defendant's deliberate indifference to the rights of people with disabilities.

## III. COUNT THREE

### NEV. REV. STAT.; NRS. 484B.467

28. 2010 Nevada Code: Title 43 Public Safety, vehicles, watercraft Chapter 484, Traffic laws, NRS. 484B.467, Parking signs designated for persons who are handicapped: Signs, Required plates or placard for parking in handicap parking, prohibited acts, penalty, NEV. REV. STAT. NRS.484.408, 2013 Replaced in revision by NRS.484B.467, Handicap Parking, sign van accessible access aisle requires a sign.

### PRAYER FOR RELIEF

1. Plaintiff, HERBERT S. OLSON, pro se, demands a trial by jury.
2. That the Court declares the Defendant's to be in violation of Title II of the Americans with Disabilities Act of 1990 and Section 504 of the Rehabilitation Act of 1973, due to its failure to maintain its public rights of way in a manner equally accessible to the disabled.
3. Plaintiff, hereby request two million ($2,000,000.00) dollars against the Defendant's.
4. For damages according to proof;
5. For the Court cost of the complaint;
6. To enjoin Defendant's for failing or refusing to opperate the State Capitol, in a manner that complies with Title II of the Americans with Disabilities Act of 1990 and Section 504 of the Rehabilitation Act of 1973.
7. This Honorable Court enjoins and orders the Defendants to alter its facility to make such accessible to and usable by "qualified

individuals with a disability," to the extent required by Title II of the ADA.

8. Award compensatory damages to Olson sufficient to fully compensate Olson for being denied equal access caused by the Defendant's discriminatory conduct at the State of Nevada, State Capitol, located at 101 N. Carson Street, Carson City, Nevada. 89701

9. Grant, Plaintiff, HERBERT S. OLSON, all Relief justice may require.

Dated: This 31 DAY of OCTOBER, 2023

RESPECTFULLY SUBMITTED

*/s/ Herbert S. Olson*

HERBERT S. OLSON, pro se
P.O. BOX 815
FALLON, NV 89406

18.

Herbert S. Olsen
PO Box 815
Fallon, NV 89406

USPS SERVICE

Clerk, US District Court
District of Nevada
400 S. Virginia St. Unit 301
Reno, NV 89501

Filed ___ Received ___ Entered ___ Served On
___ Counsel/Parties of Record

OCT 23 2023

Clerk US District Court
District of Nevada
By: _____ Deputy